BRAINERD W. MAPLES *vs.* THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

The plaintiff purchased of the defendants a commutation ticket, which conferred upon him the right to ride in the cars upon the defendants' railroad between the city of New York and the town of Westport during the ensuing year, upon certain conditions. One of the conditions was that the ticket should be shown to conductors when requested, or when required by the rules of the company. One of the company's rules in force during the year required commuters to show their tickets to conductors when required, in the same manner as other passengers. At the time of purchasing the ticket the plaintiff signed a receipt containing similar conditions. During the year, while the plaintiff was riding in the defendants' cars between New York and Westport, he was requested by the conductor to show his ticket. The plaintiff had his ticket upon his person, but was unable to find it at the time, and so informed the conductor. The conductor knew that the plaintiff was a com-

muter, and that the time covered by his ticket. had not expired, but acting in accordance with the instructions of the defendants, he demanded of the. plaintiff his fare for the trip, and· on his refusal to pay it ejected him from the train. Held, that the plaintiff was not bound to produce his ticket immediately when requested, but was entitled to a reasonable time to find it, and was entitled to ride as long as there was any reasonable expectation of finding it during the trip; that under the circumstances the production of his ticket by the plaintiff was the merest formality,) and that in the absence of an express stipulation in the contract that the plaintiff should pay the fare of the passage unless the ticket should be produced, his failure to produce the ticket was not such a breach of the contract as to justify the defendants in rescinding it, and treating the plaintiff as a trespasser on the train; and that if the defendants had a right to eject the plaintiff from the train, they had no right to do so elsewhere than at a regular station on the road—that any rule or regulation of the defendants which required or allowed such an act to be done between stations to a person in the condition of the plaintiff was unreasonable and void.

· TRESPASS ON THE CASE, for the ejection of the plaintiff from the defendants' cars by a conductor ; brought to the Superior Court, and tried on the general issue closed to the jury, before *Minor, J.* The court rendered judgment of non-suit, and the plaintiff filed a motion in error for the refusal of the court to set aside the non-suit. The facts are sufficiently stated in the opinion.

*Thompson,* for the plaintiff in error.

*Child,* for the defendants in error.

PARK, J. We think there is manifest error in the decision of the court below in refusing to set aside the non-suit that had been ordered by the court. Some time in the month of December, 1868, the plaintiff purchased of the defendants a commutation ticket, which conferred upon him the right to ride in the cars upon the defendants' railroad from the town of Westport to the city of New York, during the year 1869, upon certain conditions. One of the conditions was that the ticket should be shown to conductors when requested, or when required by the rules of the company. One of the company's rules in force during the year, and the only one that it is important to consider, was as follows: "commuters will show

their tickets to the conductors in the same manner as other passengers, when required." One of the conditions in the receipt signed by the plaintiff at the time he received his commutation ticket from the defendants was to this effect: " the commutation ticket is to be shown to conductors, and whenever otherwise required by the rules of the company, in the same manner as are other passenger tickets."

On the 24th day of May, 1869, the plaintiff entered the cars of the defendants at the city of New York, to ride over the defendants' road to his home in Westport. When the train was about four miles from the city the conductor of the train requested the plaintiff to show his ticket. The plaintiff had his ticket, but was unable to find it at the time, and so informed the conductor. The conductor knew that the plaintiff was a commuter, and that the time mentioned in the ticket had not expired, but acting in accordance with the instructions of the defendants he demanded of the plaintiff his fare for the trip, and told him that unless he paid it he should eject him from the train. The plaintiff refused to pay the fare, on the ground that he had his ticket but was unable to find it, and had paid his fare by the purchase of the ticket. Thereupon the conductor stopped the train and ejected the plaintiff from the cars. During the morning of that day the plaintiff rode to New York on his ticket, and at night when he retired it was found upon his person. These are the principal facts, and we think they show that the defendants broke their contract with the plaintiff in ejecting him from the train at the time it was done. When the conductor requested the plaintiff to produce his ticket it happened to be mislaid. The plaintiff was entitled to a reasonable time to find it. The contract required him to show his ticket to the conductor, but he was not bound to do it immediately when requested. The conductor knew the plaintiff was a commuter, and the only question in his mind was whether the plaintiff would be able to produce his ticket. The plaintiff informed him that he had it, but was unable to find it because it was mislaid. Under such circumstances the plaintiff was entitled to ride as long as there was any reasonable expectation of finding it

during the trip. Had a reasonable time been allowed him to find it undoubtedly it would have been found, for it was upon his person, and dropped from his garments when he undressed himself to retire that night. The case is unlike that of *Downs v. N. York & N. Haven R. R. Co.*, 36 Conn., 287. There the plaintiff had left his ticket at home, and so informed the conductor. The ticket could not by possibility be produced, and the plaintiff knew it, and so did the conductor. Delay in that case would have been of no avail. The fact was certain. The case here is directly the opposite of that in this important respect.

Again, in the case of Downs there was an express stipulation in the contract that he should pay his fare for the trip if the ticket should not be shown to the conductor when requested. Here there was no such stipulation. It is true the contract required the plaintiff to show his ticket to conductors when requested by them, or when required by the rules of the company, but it may well be questioned whether the breach of such a condition in the contract gave the defendants the right to eject him from the train, when they knew through their conductor that he was a commuter, and knew that his inability to produce the ticket arose simply from the fact that his ticket was mislaid. In the case of Downs the trip was virtually excepted from the operation of the ticket by the express stipulation in the contract to pay fare for the trip if the ticket should not be produced. The case was the same as it would have been if the contract had declared in express terms that the ticket should apply only to cases where it was produced, and all other cases should be excepted from its operation. Downs, therefore, was nothing more than a common passenger on the train, without a common passenger ticket, and was liable to be dealt with as a common passenger. But here the contract embraced the trip as much as it did any other trip that the plaintiff might make on the road. The plaintiff agreed to show his ticket in like manner with other passengers. This was required in order that the conductor might know that he was a commuter. But the conductor knew the fact.

The production of the ticket under such circumstances was the merest formality. Suppose the plaintiff had agreed with the defendants that he would show his ticket to the conductor three times during each passage over the road, and on the trip in question he had shown his ticket twice to the conductor, but when required the third time to produce it the ticket happened to be mislaid. Suppose the conductor should distinctly remember that the ticket had been twice produced, and the production of it the third time would give him no needful information. Would the defendants be justified in ejecting him from the train without an express stipulation in the contract that the plaintiff should pay the fare of the passage unless the ticket should be three times produced? We think not. So we think here. There must be something more than the merest technical breach of the contract, in order to justify the defendants in rescinding it so far as it applied to the trip, and treating the plaintiff as a trespasser upon the train.

We have made no allusion to the order that was passed by the defendants in January after the plaintiff purchased his ticket. That order has no application to the case, for it is obvious that the defendants could not at that time add new conditions to the plaintiff's contract. That order was in force when Downes made his contract with the defendants, and it was an important consideration in the decision of that case.

Again, we think on another ground that the plaintiff made out a *primâ facie* case against the defendants. The plaintiff was ejected from the train at Harlem which was not a station on the defendants' road. Conceding that under the circumstances we have detailed the defendants had the right to eject the plaintiff from the train, we think they had no right to do it elsewhere than at some regular station on the road. Any rule or regulation of the defendants that requires or allows such an act to be done between stations to a person in the condition of the plaintiff, thus subjecting him to the trouble and expense of going a number of miles in order to take another train, savors too much of vindictiveness to be reasonable. We have no hesitation in saying that such a rule is·

unreasonable, and is therefore void so far as it applies to a case like the one under consideration. We say this without reference to the statute of 1867. Whether that statute applies to the case or not we leave undetermined.

For these reasons we think there is manifest error in the judgment of the court refusing to set aside the non-suit that had been ordered in the case.

In this opinion the other judges concurred.